IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

SANDY BLANCHARD,

                Plaintiff,                      OPINION AND ORDER

v.

                                                    19-cv-911-wmc

ANDREW M. SAUL,
Commissioner of Social Security,

                Defendant.

---

      On January 3, 2019, Administrative Law Judge ("ALJ") David Skidmore issued a final opinion denying plaintiff Sandy Blanchard's application for Supplemental Security Income. Under 42 U.S.C. § 405(g), plaintiff appealed that decision, arguing the ALJ erred by failing to resolve a conflict between the vocational expert testimony and the *Dictionary of Occupational Titles*. (Dkts. #9, 10.) Relying on Seventh Circuit law, the Commissioner argues in response that there was no conflict and, therefore, no error. (Dkt. #12.) For the reasons discussed below, the court agrees with the Commissioner and will deny plaintiff's appeal.

BACKGROUND[1]

      On June 11, 2015, plaintiff Sandy Blanchard filed an application for supplemental security income, claiming that she had been disabled beginning February 24, 2011. Specifically, plaintiff alleged that she suffers from the following conditions, rendering her unable to work: (1) back problems; (2) restless leg syndrome; (3) chronic migraines; (4)

---

[1] The following facts are drawn from the administrative record, which can be found at dkt. #8.

ankle arthritis, necessitating further surgery; (5) "PTSD/panic attacks/anxiety/depression"; and (6) a heart disorder. (AR at 359.)

Blanchard's claim was denied initially and again on reconsideration, after which she requested a hearing before an ALJ. On September 11, 2018, ALJ Skidmore presided over a hearing at which Blanchard, her counsel, and impartial vocational expert ("VE") Thomas A. Gusloff appeared. During the hearing, ALJ Skidmore posed the following hypothetical to VE Gusloff:

> I'm going to ask you to assume a hypothetical individual who is the same age, has the same education and work history as the claimant. And, the hypothetical individual would be limited to sedentary work as that term is defined in the Regulations. In addition to being limited to sedentary work, the individual would be limited to occasional ramp and of [sic] stair climbing, no lateral or scaffold climbing, occasional balancing, stooping, kneeling, crouching, crawling. The individual would have environmental limitations, no concentrated exposure to fumes, odors, dust, gases or poor ventilation. In addition, the individual should avoid any concentrated exposure to hazards, such as dangerous machinery or unprotected heights. And then, finally, the individual would be limited to understanding, remembering and carrying out simple work instructions and the individual would be limited to routine work, which I would define as no more than occasional decision making, no more than occasional changes in the work setting.

(AR at 351-52.) The ALJ further added the limitation that the individual was limited to jobs that would permit her to alternate positions to stand for a few minutes an hour. (AR at 352.)

In response, the VE testified that such an individual would be able to perform jobs such as order clerk (DOT Code 209.567-014), charge account clerk (DOT Code 205.367-014), and document preparer (DOT Code 249.587-018). (AR at 352.) Relatedly, the ALJ

inquired of the VE whether his testimony was consistent with the information in the *Dictionary of Occupational Titles* ("DOT"). (AR at 353-54.) While the VE testified that it was, he also explained that there were certain areas that the DOT did not cover, and for those, he relied in part on his own experience. (AR at 354.) Blanchard's counsel was then given the opportunity to examine the VE, and pointed out that each of the three jobs had a "level 3" reasoning level under the DOT and asked of the VE whether such a reasoning level would "require more than just simple decision making . . . more than just following simple tasks." (AR at 354.) The VE responded: "I don't believe that I would say that having a Reasoning Level of a 3 would keep a person from the simple routine tasked work with occasional decisions and occasional changes." (AR at 354-55.)

Following the hearing, ALJ Skidmore next issued a written decision, evaluating Blanchard's disability claim under the five-step sequential framework set forth in the regulations. At step one, he found that Blanchard had not engaged in substantial gainful activity since her alleged onset date. (AR at 310.) Although finding that none met or medically equaled a listing-level impairment, the ALJ concluded at steps two and three that Blanchard suffered from the following severe impairments: degenerative disc disease of the lumbar spine, hypertension, cardiomyopathy, asthma, anxiety disorder, and major depressive disorder. (AR at 310-11.) At step four, the ALJ further concluded that Blanchard had the residual functional capacity to perform work under the same limitations outlined in his hypothetical to the VE during the hearing. (AR at 314.)

Finally, at step five, ALJ Skidmore found that jobs existed in significant numbers in the national economy that Blanchard could perform. (AR at 321-22.) In arriving at this

3

conclusion, the ALJ relied on the VE's hearing testimony that Blanchard could perform certain jobs, including order clerk, charge account clerk, and document preparer. (AR at 322.) Specifically, the ALJ explained that he had determined that the VE's testimony was "mostly consistent with the information contained in the *Dictionary of Occupational Titles*," and regardless found his testimony to be "reasonable as it was based on his training, education, and experience in the field." (AR at 322.) However, the ALJ did not address in his written opinion whether there was a conflict between Blanchard's mental limitations and the fact that each of the proposed jobs required a reasoning level of 3 under the DOT. (*See* AR at 322.)

After concluding that, despite her limitations, Blanchard could perform jobs that existed in sufficient numbers in the national economy, the ALJ found she was not disabled and denied her application for supplemental security income. (AR at 323.)

OPINION

The standard by which a federal court reviews a final decision by the Commissioner of Social Security is well settled. Findings of fact are "conclusive," so long as they are supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). When reviewing the Commissioner's findings under § 405(g), the court cannot reconsider facts, re-weigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the ALJ. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Thus, where conflicting evidence allows reasonable minds to reach different conclusions about a claimant's

4

disability, the responsibility for the decision falls on the Commissioner. *Edwards v. Sullivan*, 985 F.2d 334, 336 (7th Cir. 1993).

At the same time, the court must conduct a "critical review of the evidence" before affirming the Commissioner's decision. *Edwards*, 985 F.2d at 336. If the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, then the court must remand the matter. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). This means that even when adequate record evidence exists to support the Commissioner's decision, the decision must be remanded if the Commissioner fails to "build an accurate and logical bridge" from the evidence to the conclusion. *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008); *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 2006).

Here, plaintiff makes a *single* argument on appeal: the ALJ erred by failing to resolve a conflict between the VE's testimony and the *Dictionary of Occupational Titles*. (*See* Pl.'s Br. (dkt. #10) 9.) Specifically, at the fifth step in the sequential framework, an ALJ is to consider the claimant's residual functional capacity, age, education, and work experience to determine if he or she can make an adjustment to work. 20 C.F.R. § 416.920(a)(4)(v). In doing so, an ALJ "will take administrative notice of reliable job information" from sources such as the *Dictionary of Occupational Titles* and vocational expert testimony. § 416.966(d). Moreover, Social Security Ruling 00-4p clarifies the agency's standards for the use of such "reliable sources of occupational information." SSR 00-4p. In particular, Ruling 00-4p explains that "before relying on VE . . . evidence to support a disability determination," an ALJ must "[i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs . . . and information in the

*Dictionary of Occupational Titles* . . . and [e]xplain in the determination or decision how any conflict that has been identified was resolved." *Id*.

Thus, an ALJ has an affirmative duty to "inquire into and resolve apparent conflicts." *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008). This duty "extends beyond merely asking the VE whether his testimony is consistent with the DOT; the ALJ also must 'elicit a reasonable explanation for any discrepancy.'" *Id.* (quoting *Prochaska v. Barnhart*, 454 F.3d 731, 735 (7th Cir. 2006)). An "apparent conflict" is one that is "obvious enough that the ALJ should have picked up on [it] without any assistance." *Id.* If, however, "there is not an *actual* conflict between the vocational expert's testimony and the *Dictionary of Occupational Titles*, a claimant cannot possibly be harmed by an ALJ's failure to inquire." *Sawyer v. Colvin*, 512 F. App'x 603, 610 (7th Cir. 2013) (emphasis added) (citing *Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2009)).

Here, plaintiff contends that a conflict existed between the VE's testimony and the DOT that the ALJ failed to adequately resolve. (Pl.'s Br. (dkt. #10) 9.) Specifically, plaintiff points out that the three occupations provided by the VE all involved a reasoning level of 3 according to the DOT, and that such a reasoning level was not consistent with Blanchard's mental limitations as assessed by the ALJ. (*Id.*) Under the DOT, however, reasoning level 3 requires only that the individual to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and "[d]eal with problems involving several concrete variables in or from standardized situations." *Dictionary of Occupational Titles*, Appx. 1.

Nevertheless, plaintiff argues this is not consistent with the ALJ's limitation of Blanchard to simple work instructions, routine work, with only occasional decision-making and changes in the work setting. (Pl.'s Br. (dkt. #10) 10.) In support, plaintiff points to two Fourth Circuit cases (one of which is unpublished) finding that an apparent conflict existed between the VE's testimony that a claimant who was limited to "simple tasks" could perform jobs which, according to the DOT, required level 2 or 3 reasoning. (*See id.* at 11 (citing *Thomas v. Berryhill*, 916 F.3d 307 (4th Cir. 2019); *Keller v. Berryhill*, No. 17-2248, 2018 WL 6264813 (4th Cir. Nov. 29, 2018)). In both cases, however, the court explained that it was *not* concluding that an *actual* conflict existed between a simple instructions limitation and occupations requiring level 2 or 3 reasoning under the DOT; rather, each involved an *apparent* conflict, which the ALJ was required to inquire into and resolve. *See Thomas*, 916 F.3d at 314; *Keller*, 2018 WL 6264813, at *198-99. Plaintiff further refers the court to the *Vocational Expert Handbook*, which states that "[t]here is an apparent conflict between a job that requires reasoning level 3, and a hypothetical individual that can perform only 'simple' or 'repetitive' tasks." Social Security Administration, *Vocational Expert Handbook*, 39 (June 2020).[2]

The Fourth Circuit's explanation for these decisions puts it in some tension with controlling Seventh Circuit precedent. In *Terry v. Astrue*, 580 F.3d 478 (7th Cir. 2009), the Seventh Circuit similarly considered the argument that there was an apparent conflict in the VE's testimony that plaintiff could perform work involving a reasoning level of 3

---

[2] While the *Handbook* is published by the Social Security Administration, it is non-binding authority. *Cf. Schweiker v. Hansen*, 450 U.S. 785, 789 (1981) (confirming that a manual published by the Social Security Administration has no legal force).

and her limitation to performing only "simple" work. *Id.* at 478. Just as in the two Fourth Circuit decisions, the *Terry* court found no *actual* conflict, going on to point out that the claimant "[t]ellingly" did not argue that she could not perform level 3 reasoning tasks. *Id.* As a result, the court reasoned:

> to the extent that there was a conflict, SSR 00-4p requires the ALJ to obtain an explanation only when the conflict between the DOT and the VE's testimony is apparent. Because Terry did not identify any conflict at the hearing, she would have to show that the conflict was obvious enough that the ALJ should have picked up on [it] without any assistance. Terry's educational background and cognitive abilities appear to match the requirements of GED reasoning level three, and so any conflict is not so obvious that the ALJ should have pursued the question.

*Id.* (internal citations and quotations omitted). Similarly, in *Sawyer v. Colvin*, 512 F. App'x 603 (7th Cir. 2013), the Seventh Circuit rejected plaintiff's argument that the ALJ erred in failing to resolve a conflict between the VE's conclusion that she could perform jobs with level 3 reasoning and her limitation to "simple tasks." *Id.* at *610. In particular, the *Sawyer* court asked rhetorically, "where is the conflict?" The court further noted that "a mild, or even a moderate, limitation in an area of mental functioning 'does not prevent an individual from functioning satisfactorily.'" *Id.* at *610-11 (quoting *Roberson v. Astrue*, 481 F.3d 1020, 1024 (8th Cir. 2007)).

Plaintiff attempts to distinguish these precedents by arguing that a "close reading" of *Terry* highlights that "no conflict existed because there was no establishment at hearing that a conflict existed" which was "not the situation in this case where counsel noted and inquired about the conflict." (Pl.'s Reply (dkt. #13) 3.) In fairness to plaintiff, the *Terry* court's decision *does* appear to rest in part on the fact that the claimant did not identify

8

any conflict at the hearing. *See Terry*, 580 F.3d at 478. In contrast, plaintiff's counsel here *did* ask the VE about the alleged conflict during the hearing. (AR at 354-55.)

Still, this distinction is not enough for this court to conclude that plaintiff has demonstrated an apparent conflict such as to trigger the ALJ's duty to have elicited an explanation for the discrepancy.[3] First, regardless of whether or not an alleged conflict is raised by plaintiff's counsel, *Sawyer* found no actual conflict between a limitation to simple tasks and jobs involving level 3 reasoning. 512 F. App'x at *610-11. Second, plaintiff here has failed to demonstrate (or even attempt to argue) that Blanchard could not perform the jobs identified by the VE. To the contrary, plaintiff graduated high school and previously worked as an apartment caretaker, bartender, and customer service representative. (AR at 342, 517.) Moreover, her mental status examinations, while showing depression and anxiety disorders, consistently noted her mood to be stable with normal thought processes and content, insight, perception, orientation, memory, and behavior. (*See, e.g.*, AR at 694, 728, 772-73, 801-02, 823-24, 863-64, 952-53, 1110-11, 1116-17, 1156, 1164-65, 1232, 1250, 1298, 1327-28, 1418, 2184.) Finally, plaintiff points to nothing in the record to suggest that she would be unable to perform the job duties of document preparer, order clerk, or charge-account clerk, all three of which are unskilled and do not appear particularly complex. *See Dictionary of Occupational Titles*, 249.587-018, 209.567-014, 205.367-014.

---

[3] Even assuming that a conflict existed, the fact that plaintiff's counsel elicited a response from the VE regarding the alleged conflict is arguably sufficient to discharge the ALJ's duty. Although here, the VE simply denied the existence of a conflict, and so it is unclear whether that response alone qualifies as a reasonable explanation for the apparent conflict.

9

Because plaintiff has failed to show an apparent or actual conflict between the DOT and the VE's testimony, and because plaintiff failed to point to any evidence to show that she lacked the adequate mental skills to perform the jobs identified, the court concludes that the ALJ did not err. *See Rudie v. Saul*, No. 18-CV-562-WMC, 2019 WL 6799450, at *7-8 (W.D. Wis. Dec. 13, 2019) (plaintiff failed to identify any conflict with the DOT because level 3 reasoning is "not necessarily inconsistent with simple, unskilled work" and because plaintiff failed to "point to any evidence that she actually lacks adequate reasoning skills").

## ORDER

Accordingly, IT IS ORDERED that the decision of the Commissioner of Social Security, denying claimant Sandy Blanchard's application for supplemental security income is AFFIRMED.

Entered this 28th day of July, 2020.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge